# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ) | Bankruptcy No.: 20-22083-GLT |
| Michael B. Shepperd and, ) | |
| Patricia A. Shepperd, ) | Chapter 13 |
| ) | |
| Debtors. ) | Document No. |
| _____ ) | Related to Document No. 46 |

## RESPONSE TO DECEMBER 2, 2020 ORDER OF COURT

AND NOW comes Debtors' Counsel (hereinafter Counsel), responding to this Honorable Court's December 2, 2020 Order, representing as follows:

1. Debtors filed their voluntary petition under Chapter 13 of the Federal Bankruptcy Code on July 10, 2020 with the assistance of undersigned Counsel.

2. Debtors had a previous bankruptcy case filed on June 6, 2016 (16-22129-GLT). During that case, Debtors filed an Adversary Complaint (17-02018-GLT) under Section 11 U.S.C. § 506. After proper service and notice of same, and as a result of the Defendant's failure to respond, a Motion for Default Judgment on March 27, 2017.

3. Thereafter, with no response being filed to Debtors' Motion for Default Judgment, after service and notice thereof, a default Order of Court was entered. As the Court notes, while that Order contains no limiting language regarding its provided use, that is not the reason for the premature satisfaction of the mortgage lien, as further described below in this response.

4. It has always been the practice of Counsel's office that when an Order is entered that would eliminate a secondary mortgage lien on a debtor's residence a task would be set for the end of that case to follow-up and ensure that the mortgage lien is satisfied if, and when, a Chapter 13 case is

completed. This is done to avoid a situation where that eliminated lien could be forgotten until years or decades later, and possibly only be discovered during a proposed transfer of the property. In the instant matter, that task was set as being due by June 30, 2020 instead of June 30, 2021, which placed it much higher up the task list than it should have been placed.

5. As the Court knows, the unexpected and unprecedented COVID-19 pandemic resulted in Pennsylvania Governor Tom Wolf closing "non-life-sustaining businesses" in Pennsylvania as of March 19, 2020 at 8:00 p.m.  Like most small businesses, Counsel scrambled to put in place a process by which his office could adhere to the Governor's order, yet also continue to adequately represent clients to the best of his and their ability.  Having spoken with all staff members, several of which had serious health concerns for themselves or their loved ones with whom they are in close contact and suffered from a weakened immune state, Counsel established what he believed to be the best and most reasonable process under the circumstances.

6. At that time, none of Counsel's staff had the capability of working remotely. Counsel contracted with his office's usual "IT" company to begin setting up staff members to work remotely.  However, as was the case with every "IT" company at that time, they were overwhelmed with similar requests from other businesses and Counsel was informed that the work may not be completed for up to a month or more.  Moreover, no staff had scanning or copying abilities at their homes, or if they did, it would not be sufficient to meet the demands of the office work required.

7. With that being the case, Counsel established office protocols that required staggered office and remote work hours for the staff to attempt to only have

one or a few staff in the office at a time, and/or when necessary to prosecute clients' cases.  Counsel also established other protocol, including, but not limited to, appropriate social distancing guidelines, sanitizing doorknobs, appliances and any other common area surfaces used, and prohibitions against more than one person in any room at the same time.

8. Counsel, who had already been setup with a VPN to work remotely years prior so that he could work in before, after and/or between hearings, volunteered to work from home during the daytime hours, and would try to come into the office in the evening or night to handle any administrative tasks, such as signing checks, as well as reviewing and signing final drafts of documents and correspondence, and hopefully while there may be limited staff present.

9. Additionally, due to the pandemic and corresponding "stay at home" order, there was a drastic drop in case filings and related work for our staff stemming from the combination of the CARES Act relief, common pleas and magisterial courts' continued hearings, and halted debt collection filings, with almost no new client consultations scheduled.  As a result, Counsel advised his staff to keep working ahead on tasks with the supposed "wave" of bankruptcy filings on its way and hoping to be prepared for that anticipated avalanche of work. As part of Counsel's directive to his staff to work on future matters, the task related to the satisfaction document in Debtors prior case was completed several months ahead of the incorrect 60th month (April 2020/2021 instead of June2020/2021), along with other tasks scheduled out.

10. Counsel recalls being in the office on April 3, 2020 and having it brought to his attention that certain documents and correspondence needed to be signed.

In particular, the satisfaction document needed to be signed and notarized. At the point in time when the satisfaction document was the next document to be signed, due to the pandemic and office protocols, Counsel brought it with him into the main conference room, along with his laptop and case file, to be as socially distanced as possible from the notary.

11. It was under those circumstances that Counsel quickly reviewed his notes from his February 19, 2020 meeting with the Debtors to discuss the February 7, 2020 Trustee's Certificate of Default and corresponding Order entered on February 20, 2020 requiring the Debtor to file an Affidavit or Amended Plan. The notes from that meeting indicated that Debtors would be filing an amended plan and attempt to use the exempt IRA account for plan funding. Unfortunately, everything appeared to be on the right track at that time.

12. Coinciding with the task to file an amended plan to address the Certificate of Default, there concurrently existed a prior task to file an amended plan to first and foremost address recurring post-filing income taxes owed by debtors, as well as the anticipated application for compensation of administrative fees, while also incorporating any outstanding notices of mortgage payment change. This task was set with a due date of May 6, 2020. There was also a second and subsequent task to file an amended plan in response to the Trustee's Certificate of default with a due date of March 26, 2020 per Counsel's February 19, 2020 meeting with the Debtors. Unbeknownst to Counsel at the time, his staff incorrectly completed the amended plan task due for March 26 as a duplicate task, indicating that "There is another task for an amended plan. Marking complete."

13. Counsel admits that while he did review the file and these matters on April 3, 2020, as well as his meeting notes, it was an unusually quick and atypical review under the circumstances, and as altered due to the pandemic protocols. Not realizing the mistake that was made, while working ahead on this task and believing that the case would soon complete, Counsel signed the satisfaction document with instructions to retain it for later use upon conclusion of the case.  Unfortunately, it appears that the unusual circumstances, staggered work shifts and related confusion, a mistake or miscommunication led to the premature mailing of the satisfaction document to the Butler County Recorder of deeds, which was stamped with a recording date of April 16, 2020.

14. This Court dismissed the case on April 23, 2020 prior to the May 6, 2020 amended plan task that remained after the duplicate amended task with appropriate due date was deleted as being duplicate.  Counsel admits that mistakes were made in haste and due to a result of a series of difficult and unusual circumstances beyond his control.  Additionally, while the erroneous events did involve members of his staff, some of which are no longer employed at the firm, Counsel accepts full responsibility for his mistakes, as my staff's actions are ultimately my responsibility and subject to my review. Again, but for these unprecedented circumstances, Counsel does not believe that this kind of mistake would have happened, or if it did, those errors would have been discovered and rectified.

15. Ultimately, this matter was brought before this Court's jurisdiction once again after Counsel filed this second bankruptcy case on behalf of the Debtors and filed the Objection to Proof of Claim attaching the document filed in error. No intervening actions between the prior case dismissal and filing of this case

were taken, such as a sale or transfer of the property, that would have unjustly enriched the Debtors and/or prejudiced Veripro Solutions Inc. (who purportedly purchased, at some unknown time, the secured obligation at issue, failing to attach a proof of the assignment or other instrument evidencing ownership, to its proof of claim).

16. Counsel does not believe that sanctions under Fed. R. Bankr. P. 9011(b)(2)-(3) are warranted under the factual and legal circumstances and requests that this Honorable Court vacate the show cause provision of the December 2, 2020 Order.

17. Additionally, in accordance with the Court's directive in the December 2, 2020 Order, Counsel's office researched how to rectify this error and communicated with the Butler County Recorder of Deeds office over the holiday season. The Record of Deeds instructed our office to prepare a "reaffirmation agreement" (non-bankruptcy related document) to be recorded, as this is the document that they have recorded in the past when a mortgage satisfaction has been recorded prematurely and/or in error. That document has been drafted for transmission to the Debtors. Once the reaffirmation document has been properly recorded, Counsel will file the ordered certification regarding same, as directed by the December 2, 2020 Order.

18. Lastly, the Court's December 2, 2020 Order required that Counsel file a report detailing each time within the last few years that he or his firm recorded a satisfaction piece and/or any judgment or order of this Court avoiding a lien on behalf of a debtor, including the debtor's name, the case number, the date the instrument was recorded, and the date that the discharge was entered. The Court's Order directed Counsel to review avoidance of liens not just limited to

11 U.S.C. §506 of secondary mortgage liens, which is the basis for the Order.

Counsel has performed that review and provides the following report:

|    | Debtor(s)' Name(s) | Case No. | Recording Date | Date of Discharge | Requested Avoidance |
|----|--------------------|----------|----------------|-------------------|---------------------|
| 1. | Rose Camilli       | 17-21928 | 4/8/19         | 10/21/20          | 522(h) judgment lien |
| 2. | Vernon Walters     | 18-22559 | 5/3/2019       | Case pending      | 522(f)(2) judgment liens |

19. In the Rose Camilli (17-21928) case, Debtor filed a preference action against a creditor who recorded a lien within the 90-day period prior to the bankruptcy filing. In that adversary case (17-02123) the Defendant, Midland Funding, LLC, reached out to Counsel to resolve the matter prior to the deadline to file a response. The Stipulated Order as agreed to by the parties and signed by the Honorable Judge Deller, stated that the judicial lien is "hereby declared avoided." There was no language in the order that required Debtor to wait until the end of her case to record the Order. Counsel has spoken with colleagues who stated that they employ the same practice. Counsel is not currently aware of a specific statute or order that prohibited the avoidance of the judgment lien prior to the conclusion of the case. 11 U.S.C. §349(b) states that upon dismissal liens are reinstated, but otherwise offers no instruction on the timing of avoiding liens with a bankruptcy court order. Furthermore, it appears that the statute would automatically revest that lien regardless of any intervening lien avoidance, by operation of law that would supersede state law. Lastly, under this circumstance, paragraph 8.9 would appear inapplicable because the Debtor was not seeking to modify or reduce the lien through the Plan, but instead, seeking to avoid the lien completely by

way of separate motion. Of course, Counsel defers to the Court's directive should a law and/or rule exist that requires a different approach, or should the Court simply have a different preference altogether in the absence of a law and/or rule.

20. In the Vernon Walters (18-22559) case, Debtor sought to avoid judicial liens that interfered with exemptions set and not objected to by any creditor or party in interest. In that case, this Court's Order did not appear to limit the timing of filing the Order with the Court of Common Pleas and stated that "the aforesaid judicial lien is hereby declared avoided and unenforceable in its entirety" with the resulting underlying debt defined as dischargeable. The Court added language to the proposed order the referenced the dismissal or conversion of the case related to 11 U.S.C. §348(f) and §349(b), which by operation of statutory law, reinstates any lien avoided prior to dismissal or conversion. Counsel further incorporates paragraph 18 above, and humbly requests that the Court advise Counsel should this practice of avoiding judgment liens that interfere with a debtor(s)' exemptions prior to the successful conclusion of a case not be appropriate due to a law and/or rule presently unknown to Counsel.

21. Lastly, upon review, Counsel could not find any other instance in which he or his office satisfied a mortgage using a bankruptcy order of court issued under Section §506(d) of the Bankruptcy Code in the last 2 years, or for the last 17 years for which he has been practicing before this Honorable Court. As outlined above, the instance currently before the Court was due to a series of unfortunate and coincidental errors during unprecedented times. As a result, Counsel prays that this Honorable Court will determine that the mistake was

isolated and not a sanctionable error due to the extremely unusual and unique circumstances and vacate the show cause Order related to Fed. R. Bankr. P. 9011(b)(2)-(3).

Dated: <u>January 8, 2021</u>     <u>/s/Brian C. Thompson, Esquire</u>
Brian C. Thompson
PA ID: 91197
Thompson Law Group, P.C.
THOMPSON LAW GROUP, P.C.
125 Warrendale-Bayne Road, Suite 200
Warrendale, Pennsylvania 15086
(724) 799-8404 Telephone
(724) 799-8409 Facsimile
bthompson@thompsonattorney.com